All right, our second case this morning is 18-2116 United States v. Warwick. Mr. Waltz. Thank you, your honor. Good morning, Judge Baldock. I'm glad to be in Roswell as well. It's always a real pleasure to be here, Judge Carson and Judge Tinkovich. Let me start out to follow up on a question that Judge Tinkovich asked, because it's also in this case about whether this court can review credibility determinations by the district court. We think clearly you can. Generally, the rule is stated correctly. You usually do not upset credibility determinations from the lower court on appeal. But we believe, and we set forth in the briefing, when findings are based on determinations regarding the credibility of witnesses, if objective evidence contradicts the witness's story or the story is so internally inconsistent or implausible that a reasonable fact finder would not credit it, the appellate court may well find clear error, even though the district court's finding was purportedly based on credibility determinations. So I want to just put that up front. Now, having said that, we're here on three issues regarding the Warwick appeal. The first one was whether or not Mr. Warwick gave voluntary consent to the search that commenced on August 3rd, 2016, when the FBI was executing a fugitive warrant to try to arrest a woman by the name of Shawna Gutierrez. The second issue was, after he was detained for 35 minutes, and agent Brian Acey from the FBI, I think, realized that there might be a little problem here with what's going on with this search going on, because Ms. Gutierrez is already in custody. They're not there arresting Mr. Warwick or with a warrant for his house. They were there to try to find Shawna Gutierrez. Hey, I better think we better get a consent signed. So he presented a consent and waiver to Mr. Warwick, who had been detained for 35 minutes already at that time, and I'll go over the facts that support all this, which Mr. Warwick signed. Then the third issue, and Judge Armijo was the author of the Memorandum of Opinion and Order, and I greatly respect her as a judge. She then gave herself like an first search by finding the Doctrine of Inevitable Discovery to apply to the search that was conducted in Mr. Warwick's trailer. So we have to look at this in perspective. Here's Mr. Warwick with a woman living in this trailer by the name of Shawna Gutierrez that he picked up. Does the record disclose why a search warrant wasn't procured? No, it doesn't. It doesn't. And the reason for either the first or the second search is I'm going to point that out because that all was suppressed from the November 7, 2016 arrest warrant of Mr. Warwick from what was found from August 3, 2016. They never did ever get a search warrant for either time. But originally, Judge Tempkowitz, they got a tip, an anonymous tip that Ms. Gutierrez was located at this residence where Mr. Warwick was living. Mr. Warwick, self-admitted methamphetamine user, long-term claims that he uses as medicine and so on and so forth, and has his own set of very, very bad problems associated with his life and use of methamphetamine. But in any event, the FBI goes there on this fugitive warrant and they go en masse. And Judge Armijo does a very good job in her memorandum opinion describing how they go in there. There's a couple of FBI cars that block the ingress and egress. There's nine agents. They have tactical vests, assault rifles, weapons drawn, and they knock on the door and Mr. Warwick answers. And that's where we start getting into some of this credibility analysis. Agent Salcedo says he knocked calmly. Mr. Warwick came out. Almost like they had a Sunday morning discussion about where they're going to go to church. Well, you know, common sense tells us that that just can't be correct because there's a gun pointed at or near Mr. Warwick's head. What's the evidence besides your client's testimony that the gun was pointed at Mr. Warwick? Sure, sure. Well, Agent Salcedo himself said it was pointed at some windows right above the doorway where Mr. Warwick was standing. So if I'm here and the gun's pointed slightly over my head, I think that's a close enough call, Judge Carson, to give credibility to Mr. Warwick's belief that there was a gun pointed in the proximity of his head. And there was no debate either that one of the agents with assault rifle further on back had it trained on the trailer. Well, Counselor, you're arguing, your argument almost smacks of sufficiency of the evidence, even though you're applying it to a credibility question. Sure. Now, is there any evidence that supports Judge Armijo's finding that it was both ways, and you're wanting us to say the credibility is no good? Well, that's a sufficiency question. Is there any evidence, and I'm asking you because you've looked at the record too, is there any evidence that would support Judge Armijo's finding of the credibility? Sure, and I'm always candid with the court, as you know, and at first blush when you read this, the gut-level reaction is, let's just affirm, Judge Armijo, but when you get into the weeds and really look at what happened, I think it mandates reversal and vacating of the judgment. And that evidence basically, basically comes from just one witness, and that's Agent Salcido, who knocked on the door when Mr. Warwick answered it and said that they calmly discussed what was going on, and that at that point Mr. Warwick was escorted to a different area where he was still under FBI guard, and Agent Acey took over with Mr. Warwick at that point. Mr. Warwick was not free to leave, Mr. Warwick was not allowed to go back in, and Mr. Warwick was able to see all these things that were going on. So that's the evidence, and that's why the credibility determination, Judge Ballock, was so important, is that Judge Armijo found Agent Salcido to be that his testimony was not credible. And that's what I believe where Judge Armijo decided to believe that he had given voluntary consent to the initial search. So is your, to follow up on Judge Balduck's, is your primary argument that the agent lied about obtaining oral consent from Mr. Warwick? If it's his word against his word, is that where this, is that where it boils down? No, let me clarify one thing Judge said, which I'd be very leery to use the word that this agent lied. I have highest respect for this agent, I know these people. I don't think he lied, I think he misconstrued or misinterpreted what was happening as he's looking at it as through the eyes of an agent who is being held, I don't want to say at gunpoint, but where guns are being brandished, where their ingress, egress is blocked, where there's nine agents, and Judge Armijo does a very fine job in identifying them and even concedes. I see, I think you've made two arguments. One is that there was no oral consent, and then your other argument is, if there was, his will was overcome. That's right. And I was just focusing on the first argument, and I think you were talking about coercion primarily, and I'm looking at the evidence of the consent. The only evidence of the consent was a discussion between Mr. Warwick and Agent Salcido, and I cannot say that he was lying, I'm just saying that I believe that he was given his version of what he believed was happening. I have no doubt that the agent was telling the truth from his perspective, but I think we have to look at the objective picture of what was going on as to what even Judge Armijo recognized in the record. And there's really two coercion arguments here. One is for the initial consent, and then secondly for the written consent form, whether that was coerced as well. And the government, I think, has made a waiver argument as a first, and what should I look at in the brief to tell me that you made that argument to the court? Sure, sure. Because she didn't make findings on that, and we're kind of stuck. Thank you, thank you, Judge Sienkiewicz. We did a specific section in the reply brief because this was raised in the government's answer brief, and the case law and authority is so clear when the arguments are so intertwined and fully briefed and fully discussed, even though if not carved out specifically, they're so inherently intertwined that it's still proper appellate review. And we pointed out in the motion, and I was not the attorney down below, I'm not casting stones, but I wasn't, the way that the motion was drafted, I believe it was broad enough to also encompass the first consent issue as well. And so I think it is properly preserved. Okay, just a broad construction of your brief. Absolutely, and the second issue, you know, certainly there was, there were armed police there, but he was given a written consent form, he read through it, line by line, orally signed it. Right. You know, you say 30 minutes, it cuts against the government, but doesn't it show that we're in a fairly relaxed situation? They're joking about the application of the Second Amendment and slingshots. Why is it implausible for Judge Armijo to conclude that there was no coercion? I'll tell you why, Judge Timkevich, I think it's a very valid point that you bring up. However, Agent Acey, you have to ask yourself, why did they all of a sudden decide that they needed this informed consent signed? Why did they do that? If they had already had voluntary consent, we already knew that there were six agents that were in the trailer, they had already found Shauna Gutierrez. Well, it's a new search. Is it? We don't believe so. I think it's the continuation of the illegal search that started in the first place. Well, that's a different argument. Brian Acey is a smart, smart FBI agent. I know this man. I have highest respect for him. He's thinking, wait a minute here, wait, hold on, hold on, hold on. They found a gun. All these agents are still in there. They have Shauna. She's not even in the trailer anymore. They're still in there searching. For what? Why? They're there on a fugitive warrant, not a search warrant. There's no protective sweep going on. So Agent Acey... But they've already, they saw the guns when they extricated Shauna from the closet. So those were in plain view. Mr. Warwick has told the agents they're his. They find out he's a previously convicted felon. So he's got two choices. One is to get consent again. Right. To go, you know, grab the guns or go get a warrant. So... Well, what Agent Acey does, Your Honor, is he runs a background check on Mr. Warwick after they found the guns. Not before, after they found the guns. And the facts and circumstances surrounding the whole thing, Agent Acey and Mr. Warwick are off to the side. And there's some bantering going on because of the nature of Mr. Warwick's personality. He's a meth user. You know, he's just not right. But in any event, there's a joke. He has a holster where he has a slingshot instead of a weapon. He adamantly believed, as you know from the transcript, he has a Second Amendment right to bear arms. He believes that the methamphetamine he uses for his own medication. And he truly believes that. But that doesn't initiate the fact that there was not consent, voluntary consent, in the first place. And what Agent Warwick, I'm sorry, what Bill Warwick said, and the court also said, is Mr. Warwick said something important. He says, they're in there anyway. I'll sign. And... That's not what she found. I'm pretty sure she did. There's another little statement also. Tell me what she found. I will. Just take me just a second, if I can take some, because I highlighted it. And I will find it. And I might want to do is reserve my minute 40 seconds so I can find it when I come back up. Perfect. That's a good solution. Thank you, Counselor. Thank you. You'll have quite a little time. You may proceed, Mr. Alderkin. May it please the Court, Counsel, my name is Thomas Aliberdi, and I'm representing the United States in this matter. There is a consistent theme throughout the appellant's briefing, extending to oral argument this morning, and that is to highlight some facts in this case and to completely ignore others. Those that are highlighted or illuminated are done so in the light most favorable to himself, instead of the light most favorable to the District Court's findings. I think what is clear is that the defense strategy throughout this case was to bootstrap the initial contact between law enforcement and Mr. Warwick and to use that as ammunition to find the subsequent written consent involuntary. The District Court in this case devoted 27 of the 42 pages in the written order to a careful analysis of the totality of the circumstances and the relevant case law and found against Mr. Warwick on his motion to suppress, and the United States is asking this Court to affirm. I want to start with the first issue with respect to consent. It sounds as if the appellant has conceded that in fact this was a credibility determination. Mr. Warwick testified at the suppression hearing that he did not consent when law enforcement encountered him at the door of his trailer and law enforcement stated that indeed he did. The Court came down on the side of law enforcement, found their testimony more credible, and those credibility determinations are given great by this Court, and therefore the United States is asking this Court to affirm on that issue. If we find no waiver on the voluntariness issue, I don't know where the property was, but you have nine officers, tactical gear, guns pulled, house surrounded, you know, almost to the point, you know, hands up, come on out, and Mr. Warwick, you know, his face, I assume was told that there's a suspected murderer in the house, right? You know, that seems like a fairly coercive environment. You know, I wondered, I was looking for a reason why there wasn't a search warrant procured. With that kind of show of force, it seems like that would have been expected. I don't, they weren't in hot pursuit, were they, of this woman? Well, I think they had spent some time earlier in the day going from home to home as Agent Acey testified that they had encountered problems, quote unquote, when they arrived at each of these places where they believed Ms. Gutierrez to be. In other words, folks went to jail, they encountered other S&M members. So, if I understand your question correctly, if this court finds... I meandered a bit, but, you know, it looks like a coercive environment to an objective observer, and is your answer just the court didn't believe Mr. Warwick? So, is this in respect to the voluntariness of the initial verbal consent to search the home for Ms. Gutierrez? Yeah. If this court finds that, in fact, that that issue was preserved on appeal, which it is the United States position that it was not, there are, there is plenty in the record for this court to determine that, in fact, that was a voluntary consent. Well, that brings me back to your issue about it was not raised below. That's correct. Well, show me or tell me that it wasn't, because it looked to me like, in my reading, that it was raised below. So... Assured. Certainly, Your Honor. I am looking at document 34, the original motion to suppress, page 4, note 1, the heading on the original motion to suppress, where they list that the and I'll read the footnote for Your Honor. It states that Mr. Warwick denies that he ever signed a search form. This matter will be taken up by the defense at a later date. This pleading addresses the issue of involuntary consent in the event that the court finds at a later date that Mr. Warwick signed a consent to search form. The issue was narrowed from the very beginning of this briefing at no point in time in the motion to suppress and other opportunities like the reply, the suppression hearing, the conclusions that were requested by the district court. Was this issue specifically raised? In other words, was there a sentence that said, Mr. Warwick, his consent, his verbal consent to enter the home was involuntary? On appeal, when I raised the issue in my brief, the appellant did not take advantage of the safety valve against manifest injustice, the good cause exception. In addition, I think United States v. Vance is also instructive here, that's footnote 5, and it illustrates a construct that was taught to me early on in my law career by Professor Melvin Tsar, which I think is appropriate here on Law Day, where there may be other potential lawyers in the gallery, that law is a lawyer-driven process. In other words, where this individual, this appellant, did not challenge the rule in United States v. Burke, it controls. In other words, if it was not raised below, it is waived. What do you do with the district court's specific finding as to voluntariness with respect to the court? The district court made a specific finding that that was voluntary. So if it wasn't raised, why did the district court bring it up herself? And even if it wasn't raised, isn't it fair game? Because she did base her ruling on that. So the district court's ruling was that the defendant does not argue that consent was voluntary. The court finds that the defendant voluntarily consented to the search of his residence, both for Ms. Gutierrez and to a later full search. So that suggests that she was viewing it as a voluntariness issue. And so I mean, I think I know what your position on that is. That's right. So there's a little contradiction. But the other thing I'm curious about is she finds this voluntariness element, but she never makes a specific finding as to whether any guns were pointed at him or not. She says it's in dispute, but then she basically doesn't make that finding. Doesn't she have to make the finding about the guns? Because don't you agree that if they had guns in his face, that her credibility determination would be erroneous? So in the court's order in paragraph 17, Judge Armijo states in the general sense that she finds the law enforcement officer's testimony more credible than the defendant's with respect to the circumstances of the verbal consent to search the home. So there was a finding of credibility. Those officers testified, Officer Alcedo testified that when the three officers arrived and approached the residence, they did not have firearms drawn or pointed. Paragraph 18 refers to Agent Howard's testimony that he was the agent and the only agent that was back with the vehicles that had a firearm trained anywhere at the residence or trained at all that day. So when Mr. Warwick exits, the court also made a specific finding in paragraph 18 that Agent Howard immediately lowered his firearm. And thus it was business as usual after that. So any overt show of force rapidly dissipated. And I think what's instructive is the case that I submitted in my supplemental authority, United States v. Kimilano, and the comparative law analysis in different circuits, specifically United States Taylor from the Seventh Circuit, which indicates that was a case where law enforcement arrived en masse to break up a counterfeiting operation at a used car dealership. And the court found that those tactics, when you believe that life and limb is an issue, are not inherently coercive. And so also in that case, law enforcement, any indicia of an overt show of force immediately was dissipated. Firearms were lowered. And so I think it is completely and totally an analogous case to this situation, but it is not the only factor to be taken into consideration with respect to a voluntariness analysis, especially with the approach and verbal consent. There are several factors that are listed in United States Harrison. Here there was no use of violence. There was no physical contact. There was no promises or inducements. His physical and mental capacity was significant in that he was a 52-year-old man who was familiar with law enforcement and that he had had a prior felony conviction. What if she would have found that they had pointed their guns at him, but then went on to find that it was a voluntary consent? Well, I think that Judge Armijo did make a finding that despite the display of weapons and the fact that there were nine law enforcement officers on the property, that Mr. Warwick remained calm, confident, and assertive from the moment that he exited his house. And that is not consistent with somebody whose will had been recently overborn. In addition, I think also that Quimolano itself is instructive here. Law enforcement officers entered a hotel room. Their firearms were drawn and pointed at three individuals inside the hotel room. They were commanded to put their hands up. There was physical contact there. They patted these individuals down. And then firearms were lowered. And the district court in that case found credible the officer's testimony that the circumstances afterwards were calm, similar to this case. And therefore, it was not found to be a coercive environment when the law enforcement officer subsequently asked for consent from the individual to search the room. So I think there is not only the findings of fact of the district court, but also an abundance of circuit law that illustrates that not only is that not a dispositive factor, but it is not the only factor that needs to be taken into consideration. Here, there's no deception. There's no aggressive tone. There was no retention of his property. There was no trickery. There was no attainment of lawful consent or attainment of consent via claim of lawful authority, which I think distinguishes this case from the majority of cases that were cited in the appellant's brief. So your answer is even if they were pointing their guns at him, once they put them down and everything calmed down, it was voluntary? That is correct. It was business as usual. They secured the scene. They did interviews. They explained to Mr. Warwick what was going on right after it took place. They showed him the wanted poster. They explained to him that they were there for Ms. Gutierrez. And all the factual findings surrounding the subsequent encounter with Agent Acey in terms of the written consent were determined to be friendly. I'd also point out that the simultaneous encounter on the side of the house with John Miramontes is also instructive to this court. Agent Acey, as part of the three teams of three, went to the side of the residence with a couple other agents and made contact with Mr. Miramontes, also an encounter that was determined to be friendly by the district court. So I do quickly want to address the fact that this court should do the heavy lifting on the part of the appellant and just find that this voluntariness issue was raised by doing a broad analysis of the argument at the lower court level. I think United States v. Lambert is a case that's instructive. That was a case that I cited to in my voluntariness section. In that section, or in that first part of that opinion, it talks about this type of an issue with respect to a conditional plea, which is what the circumstance was in this case. But what it says is that, in that case, Lambert argued that it was implicit the argument that at the lower level was that a lack of voluntariness with respect to the search, and then at the appellate level it was I was illegally detained, and the taint of that illegal detention rendered my consent involuntary, and this court did not take the bait. In essence, this court said that that is a completely and totally different legal determination, whether there's a voluntariness and whether the taint took place. The district court didn't make that analysis because the case that issue was not raised below, and I think that it's analogous to this situation as well. Let me ask you this, counsel. Can you win if we find that the consent to enter to look for the lady was not voluntary, but then later on the written consent to go in and get the guns was voluntarily? Do you still win, or does the first holding make you lose altogether? Well, I think that this may go to the inevitable discovery. That's where I'm headed. So, as I stated in my brief, that the first and third elements, they count against the government with respect. There was never a warrant that was obtained. There were never any steps that were warrant, but as the appellant stated in his oral argument, Agent Acey was a very, very smart agent, and so there was an abundant probable cause for the second element. In the fourth element, there's no indication that there was any sort of jumping the gun in this case for a lack of confidence in their probable cause determination. Agent Acey was a very smart agent. He obtained valid written consent from someone who had actual authority, not like a non-lawful reliance on and so this was an individual with a lot of experience. Had they not obtained that written consent, they would have sought a warrant curing him. I mean, what's the evidence of that other than your own personal experience with Agent Acey? Well, I think that the record at the suppression hearing was he detailed in abundance his experience. He was an adjunct professor at UNM as well. Okay, I'm going to give you that he's experienced, but what's the record and the evidence that because of that experience he was going to go get a warrant if this didn't go right? Well, because of that experience, he obtained a valid written consent that he went over line by line with both Mr. Miramontes and Mr. Warwick, and I think that the inference is elementary that had he not received that written consent that he would have obtained a warrant. Thank you, counsel. Thank you. Time's expired. Mr. Walsh, you had some rebuttal. Thank you. Regarding the one statement that was in the record, it wasn't just Armijo's memorandum of opinion and order, but she gave him no credibility. She found a credibility determination against him where she stated the defendant was friendly and- What page, counsel? It's page 11 of the memorandum of opinion and order, and the full site, your honors, is given in my brief, but it's paragraph 50, number 11. Defendant was friendly and agreeable and responded to agent AC, quote, well, you guys are already here anyway, and signed the form. The court finds defendant's contradictory testimony not credible. So there was evidence in record as to what Mr. Warwick said at the time, but more importantly, this distinction that somehow this coercion has gone away just doesn't hold because these agents are still there. Judge Armijo also in her opinion at page 15, paragraph 68, reiterates the fact that the court finds that despite the sizable number of officers present and their prominent display of guns, including rifles, defendant remained calm, confident, pleasant, sensitive from the time he exited his home until the officers left. It's just internally inconsistent. It just doesn't make sense. And then in the opinion also, and we give full citation, where the district court acknowledged the show of force and prolonged detention in weighing the written consent was voluntary or not under the circumstances was a quote close call. It's in the memorandum opinion and order. Your Honor, this should be revisited by the district court at a minimum to make findings regarding whether or not the display of the firearms and the manner in which they were affected the so-called voluntary consent or the informed consent. And all the cases we've cited clearly show you cannot give consent when it's under coercion or duress. We all recognize that and that's what happened here. The inevitable discovery argument stands for itself because we're now over time and we ask that the court vacate this judgment and remand accordingly. Thank you, counsel. Thank you, Judge. I think we understand your arguments. Counsel are excused and the case shall be submitted.